## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JEANJULIA VANDERMAELEN** | : | **Civil Action No.: 25-cv-1881** |
| **Plaintiff,** | : | |
| v. | : | |
| | : | |
| **PAUL KURIAKOSE, individually and** | : | |
| **As Managing Member of CHITRA** | : | |
| **PROPERTIES, LLC, CHITRA PROPERTIES**, | : | |
| **LLC, 17-29 SOUTH MAIN ST LLC, and** | : | |
| **DKRK PROPERTIES, LLC** | : | |
| **Defendants** | : | NOVEMBER 10, 2025 |

### <u>VERIFIED COMPLAINT</u>

1.      This action presents two distinct but interrelated claims arising from Defendants' breach of fundamental landlord obligations: first, a premises liability claim stemming from Plaintiff's January 24, 2025 fall on uncleared ice in Defendants' parking lot, resulting in traumatic injuries to her head, hip, and knee; second, ongoing violations of federal disability law through Defendants' persistent refusal to provide a simple access code following these injuries, when this 78-year-old disabled tenant, now requiring walker assistance, cannot safely navigate the main entrance stairs to her home of eighteen years—a denial met not with the requested four digits but with a retaliatory $100 rent increase. The accommodation Plaintiff seeks requires Defendants to communicate a code that already exists for an entrance already built, a task requiring less effort than typing the rent increase notice they sent instead—yet here we are. When landlords deploy economic retaliation against elderly disabled tenants seeking medically necessary accommodations following traumatic injuries sustained on their negligently maintained premises, this Court must uphold the rule of law and prevent this exploitation of society's most vulnerable members.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331

over claims arising under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.,

and the Fair Housing Act, 42 U.S.C. § 3601 et seq. This Court has supplemental

jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a). Venue is proper

pursuant to 28 U.S.C. § 1391(b) as all events occurred within this District.

## THE PARTIES

3.      Plaintiff JEANJULIA VAN DER MAELEN, born in 1947, resides at 29

South Main Street, Apartment 201, Branford, Connecticut, where she has maintained

tenancy since March 1, 2007.

4.      Plaintiff is a qualified individual with disabilities under the ADA,

diagnosed with bronchiectasis, asthma requiring nebulizer treatment, grade 1

anterolisthesis L4-L5, and severe osteoarthritis necessitating walker assistance.

5.      Defendant PAUL KURIAKOSE controls the subject property through

multiple corporate entities used interchangeably.

6.      Defendant CHITRA PROPERTIES, LLC currently holds title to the

property.

7.      Defendant 17-29 SOUTH MAIN ST., LLC previously held title from

October 2021 to October 2023.

8.      Defendant DKRK PROPERTIES, LLC serves as the management entity

through which Kuriakose operates his properties.

9.      The corporate defendants function as alter egos, with Kuriakose exercising

complete control and disregarding corporate formalities.

## FACTUAL BACKGROUND
### (Relevant to all Counts)

*Historical Pattern of Discrimination and Knowledge of Disability*

10.     A tidy and conscientious single elderly retired adjunct professor, Plaintiff maintained exemplary tenancy under previous ownership (BTB Group, LLC) from March 2007 to October 2021, with rent increases totaling $75 over fourteen years.

11.     Following Defendants' acquisition of the property in October 2021, Plaintiff documented her life-threatening respiratory disabilities to Defendants through multiple written communications beginning December 2021 continuing throughout her tenancy.

12.     On March 31, 2023, Defendants served Plaintiff with a retaliatory eviction notice after she requested enforcement of the lease's no-smoking provision necessitated by her documented disabilities.

13.     On April 19, 2023, Plaintiff's counsel transmitted comprehensive medical documentation to Defendants' attorneys, establishing Plaintiff's bronchiectasis, asthma, and high-risk status for COVID-19 complications.

14.     The April 2023 correspondence specifically stated: "Attached to this email are multiple doctor's notes documenting my client's disability and how your client's failure to remedy the smoking issue has exacerbated her illness and disability."

15.     Despite receiving this medical documentation, Defendants offered merely $1,000 in "cash for keys" to force the 76-year-old disabled tenant from her home of sixteen years instead of simply remediating the issue.

16.    Plaintiff's counsel's April 2023 correspondence warned Defendants that their conduct constituted disability discrimination and violated Connecticut Unfair Trade Practices Act.

*Pattern of Retaliatory Rent Increases*

17.    Following Plaintiff's protected requests for disability accommodations, Defendants imposed unprecedented rent increases:

1.    October 2021: $1,175 (inherited from prior ownership)

2.    October 2022: $1,325

3.    May 2024: $1,395

4.    April 2025: $1,495

5.    September 2025: $1,595

18.    The $420 monthly increase over less than four years contrasts starkly with the $75 increase over the preceding fourteen years under prior ownership.

19.    The rent increases have created an economic hardship for the Plaintiff, who lives off a fixed income.

*The January 24, 2025 Fall and Resulting Injuries*

20.    On January 24, 2025, at approximately 10:30 a.m., Plaintiff fell on accumulated ice in the parking lot of 29 South Main Street while attempting to reach her vehicle.

21.    Weather records establish winter storm conditions in the days preceding January 24, 2025.

22.    At the time of the fall, winter storm conditions had ceased with no ongoing precipitation.

23.     Defendants maintained exclusive control over snow and ice removal for the parking lot and common areas.

24.     The parking lot and common areas remained open to residents without warnings or barriers restricting access.

25.     No salt, sand, or ice-melting materials had been applied to the parking area where Plaintiff fell.

26.     The fall caused Plaintiff to violently impact the frozen pavement, striking her head, hip, and lower extremities with substantial force.

27.     Plaintiff went that day to Yale New Haven Hospital Shoreline Emergency Department.

28.     Medical imaging revealed scalp hematoma with significant swelling, requiring CT scans of the head and cervical spine to rule out intracranial bleeding and fractures and X-rays of the knee, spine, wrist, and thumb.

29.     The traumatic impact caused extensive orthopedic injuries including:

a. Acute injury to the right hip joint, exacerbating pre-existing osteoarthritis;

b. Soft tissue damage to muscles and ligaments throughout the right leg;

c. Traumatic injury to the left knee with persistent instability;

d. Sprain of wrist and thumb trauma requiring brace; and

e. Contusions and hematomas along the lower extremities.

30.     Hospital records document prescriptions for lidocaine patches and methocarbamol for pain management, with instructions for extensive follow-up care.

31.    The injuries exacerbated Plaintiff's pre-existing spinal condition, specifically the L4-L5 anterolisthesis documented in her medical records, creating a cascade of musculoskeletal dysfunction.

*Ongoing Consequences and Permanent Injury*

32.    The January 24, 2025 fall initiated a deteriorating pattern of physical disability that continues to the present date.

33.    Plaintiff experiences severe, unrelenting pain throughout her hip, knee, wrist, and leg that substantially limits all major life activities including walking, standing, and sleeping and causing debilitating fatigue.

34.    The soft tissue injuries to muscles and ligaments have created chronic instability, resulting in multiple subsequent falls that have compounded the original trauma.

35.    These secondary falls, directly traceable to the compromised stability from the January 24, 2025 injuries, have prevented proper healing and created a progressive pattern of disability.

36.    Plaintiff's mobility, previously impaired but functional with assistive devices, has deteriorated to the point where she faces daily risk of additional injury navigating her own residence.

37.    The combination of traumatic brain injury, orthopedic trauma, and soft tissue damage has created permanent alterations to Plaintiff's gait, balance, and proprioception.

*Post-Injury Request for Disability Accommodation and Retaliatory Response*

38.    Following her traumatic injuries, Plaintiff's mobility impairments intensified dramatically, necessitating walker assistance and creating heightened fall risk when navigating stairs.

39.    The Branford Theater Building contains multiple entrances, including one near a yoga studio with fewer, carpeted stairs providing safer navigation for mobility-impaired individuals.

40.    This alternative entrance provides closer proximity to handicapped parking spaces, reducing the distance Plaintiff must traverse on potentially hazardous surfaces.

41.    In June 2025, Plaintiff requested the four-digit code to the alternative entrance by text message. Defendant Kuriakose never responded.

42.    On June 27, 2025, Plaintiff again texted Defendant Kuriakose: "Could you please provide me with the code to the locked handle by the yoga studio thank you--this is medically necessary due to my disability."

43.    Defendants provided no response.

44.    On July 10, 2025, Plaintiff submitted a formal written letter explaining that her post-injury mobility impairments and ongoing pain necessitated use of the alternative entrance.

45.    Rather than provide the four-digit access code—a costless accommodation requiring no structural modification—Defendants imposed a $100 monthly rent increase on or about July 24, effective September.

46.    Provision of the access code would impose no burden on Defendants, as the entrance already exists and other individuals possess access.

47.    Defendants' denial forces Plaintiff to daily risk catastrophic injury navigating stairs her damaged hip, knee, and leg cannot safely manage, while enduring severe pain with each step.

48.    Defendants' denial of this medically necessary accommodation following Plaintiff's traumatic injuries, coupled with immediate economic retaliation, demonstrates deliberate indifference to her federally protected rights and conscious disregard for her physical safety.

## COUNT ONE – PREMISES LIABILITY
### *Against All Defendants*

40.    Plaintiff realleges paragraphs 1-39.

41.    Defendants owed Plaintiff a duty to maintain common areas, including parking lots, in a reasonably safe condition.

42.    This duty specifically encompassed timely snow and ice removal following winter weather events.

43.    Defendants breached this duty by failing to clear, treat, or warn of ice accumulation in the parking area.

44.    The breach proximately caused Plaintiff's fall and resulting injuries.

45.    Plaintiff sustained damages including medical expenses, pain and suffering, and permanent aggravation of pre-existing conditions.

## COUNT TWO – NEGLIGENCE
### *Against All Defendants*

46.    Plaintiff realleges paragraphs 1-39.

47.    Defendants knew or should have known of winter storm conditions creating hazardous ice accumulation.

48.    Despite this knowledge, Defendants failed to exercise reasonable care in maintaining safe premises.

49.    A reasonable property owner would have applied salt or ice-melting materials, cleared accumulated ice, or posted warnings.

50.    Defendants' failure to take these reasonable precautions constitutes negligence.

51.    This negligence directly and proximately caused Plaintiff's injuries and damages.

**COUNT THREE – VIOLATION OF THE
AMERICANS WITH DISABILITIES ACT**
***Against All Defendants***

52.    Plaintiff realleges paragraphs 1-39.

53.    The Branford Theater Building's common areas constitute places of public accommodation under Title III of the ADA.

54.    Defendants discriminated against Plaintiff by denying reasonable modifications necessary for equal access to the premises.

55.    The requested access code constitutes a reasonable modification imposing no fundamental alteration or undue burden.

56.    Defendants' denial forces Plaintiff to risk injury using an entrance she cannot safely navigate with her mobility impairments.

57.    The discrimination is ongoing and has intensified following Plaintiff's injuries, as she now requires walker assistance.

58.     Defendants acted with deliberate indifference to Plaintiff's federally protected rights, as evidenced by their documented knowledge of her disabilities since December 2021.

## COUNT FOUR – VIOLATION OF THE FAIR HOUSING ACT
### *Against All Defendants*

59.     Plaintiff realleges paragraphs 1-39.

60.     The Fair Housing Act prohibits discrimination in housing based on disability and requires reasonable accommodations.

61.     Plaintiff's request for an access code to use a safer entrance constitutes a reasonable accommodation request.

62.     Defendants refused this accommodation without any legitimate justification or interactive process.

63.     Defendants retaliated against Plaintiff's accommodation requests through systematic rent increases totaling 30.2% over less than four years.

64.     Defendants' April 2023 eviction attempt following Plaintiff's request for smoking cessation enforcement constitutes additional retaliation for asserting fair housing rights.

65.     This pattern violates 42 U.S.C. § 3604(f)(3)(B) and constitutes unlawful discrimination.

## COUNT FIVE – VIOLATION OF
## CONNECTICUT GENERAL STATUTES § 46a-64c
### *Against All Defendants*

66.     Plaintiff realleges paragraphs 1-39.

67.     Connecticut law prohibits discriminatory housing practices based on physical disability.

68.     Defendants' denial of reasonable accommodation and retaliatory rent increases violate state anti-discrimination law.

69.     Defendants' pattern of conduct, including the attempted eviction and systematic economic pressure, demonstrates willful violation of state civil rights protections.

70.     These violations entitle Plaintiff to compensatory and punitive damages under state law.

## COUNT SIX – VIOLATION OF
## CONNECTICUT UNFAIR TRADE PRACTICES ACT
### *Against All Defendants*

71.     Plaintiff realleges paragraphs 1-70.

72.     The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b et seq., prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

73.     Defendants' systematic campaign to constructively evict Plaintiff constitutes an unfair trade practice within the meaning of CUTPA, satisfying both the cigarette rule's prohibition against immoral, unethical, oppressive, or unscrupulous conduct and the Federal Trade Commission Act criteria for substantial unjustified consumer injury.

74.     The unfair practice consists of a coordinated scheme targeting an elderly disabled tenant who possesses statutory protection against eviction without cause

pursuant to Conn. Gen. Stat. § 47a-23a(1), which prohibits eviction of tenants over age sixty-two in buildings with five or more units absent good cause.

75.    Defendants' scheme employs multiple mechanisms of economic and practical coercion: (1) imposing rent increases totaling 30.2% over less than four years, exponentially exceeding historical patterns; (2) denying reasonable disability accommodations while simultaneously increasing rent; (3) attempting retaliatory eviction following protected accommodation requests; and (4) withholding a costless accommodation (access code) as leverage to induce voluntary departure.

76.    The practice offends public policy as articulated in Connecticut's fair housing statutes, the Americans with Disabilities Act, and statutory protections for elderly tenants, all of which recognize the vulnerability of disabled and elderly individuals to housing discrimination and displacement.

77.    Defendants' conduct demonstrates calculated exploitation of Plaintiff's protected status: recognizing they cannot lawfully evict a disabled tenant over age sixty-two, Defendants orchestrated economic and practical hardships designed to render continued tenancy untenable.

78.    The practice causes substantial injury to consumers that is neither reasonably avoidable nor outweighed by countervailing benefits. Plaintiff cannot avoid the injury without forfeiting her home of eighteen years, while Defendants' sole benefit derives from circumventing statutory tenant protections.

79.    Defendants' April 2023 offer of merely $1,000 in "cash for keys" following their failed eviction attempt evidences their recognition of Plaintiff's protected status and their resort to alternative means of displacement.

80.     The ascertainable loss suffered by Plaintiff includes: (1) excess rent payments resulting from discriminatory increases;  (2) medical expenses from injuries sustained due to denial of accommodation; (3) costs associated with defending against retaliatory actions; (4) diminished value of tenancy through systematic denial of services.

81.     Defendants' conduct constitutes aggravated circumstances warranting punitive damages under CUTPA, as their actions targeted a vulnerable individual with full knowledge of her disabilities and statutory protections.

82.     The pattern extends beyond isolated incidents, representing a business practice designed to circumvent tenant protection laws through economic coercion of protected classes, threatening the integrity of Connecticut's statutory framework for elderly and disabled tenant protection.

## **PRAYER FOR RELIEF**

Wherefore Plaintiffs claim the following:

1.     Declaratory relief;

2.     Compensatory damages;

3.     Punitive damages;

4.     Injunctive relief requiring Defendants to provide the requested access code accommodation and enjoining them from further discriminatory practices or retaliatory conduct;

5.     Costs incurred herein, including reasonable attorney's fees to the extent allowable by law;

6.     Disgorgement of rent monies previously paid;

7.     That this Court retain jurisdiction over this matter;

8.      Trial by jury;

9.      Such other relief as the Court deems just, fair and equitable.


                        The Plaintiff,
                        JEANJULIA VAN DER MAELEN



                By:  ___/S/_____
                        Alexander T. Taubes
                        470 James Street
                        Suite 007
                        New Haven, CT 06513
                        (203) 909-0048
                        alextt@gmail.com
                        ct30100


                **<u>VERIFICATION OF COMPLAINT</u>**

    I, JeanJulia VanderMaelen hereby declare under pains and penalties of perjury

under the United States of America that the foregoing complaint is based on my personal

knowledge, true, and accurate to the best of my knowledge and belief.

                        _JeanJulia Van Der Maelen_
                        JeanJulia VanderMaelen


Dated this ___ day of October, 2025.
      11/9/2025


14